UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ASA YOHANANOV, as Natural
Father of Lia Yohananov and Alice
Yohananov,

       Plaintiff,

v.

       Case No:  2:22-cv-283-JLB-KCD

BRIS AVROHOM OF FAIR LAWN,
d/b/a FAIR LAWN JEWISH DAY
CAMPS, BRIS AVROHOM OF FAIR
LAWN, INC., and RABBI MENDEL
ZALTZMAN,

       Defendants.

---

ORDER

Plaintiff Asa Yohananov ("Mr. Yohananov"), proceeding pro se, has brought

suit on behalf of his two minor daughters, L.Y. and A.Y.,[1] against Defendants Bris

Avrahom of Fair Lawn d/b/a/ Fair Lawn Jewish Day Camps, Bris Avrohom of Fair

Lawn, Inc., and Rabbi Mendel Zaltzman (collectively "the Defendants") for

"employing false and deceptive practices in their online advertisement" and for

breach of contract.  (Doc. 1.)  The Defendants, who claim to have no connection to

the State of Florida, have moved to dismiss Mr. Yohananov's Complaint for lack of

personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  (Doc. 5.)

---

[1] Mr. Yohananov refers to his daughter using their full names, but the Court will
use their initials in order to protect their anonymity.

Defendants have supported their motion with an affidavit from Rabbi Zaltzman, the Director of Fair Lawn Jewish Day Camps.  (Doc. 5-1.)  After careful review of the pleadings and affidavit, and construing Mr. Yohananov's pro se pleadings liberally, the Court finds that Mr. Yohananov has failed to establish a prima facie case of this Court's personal jurisdiction over Defendants.  As such, Defendants' Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

<u>BACKGROUND</u>

Mr. Yohananov is a resident of Fort Myers, Florida and the father of L.Y and A.Y., who are both minors.  (Doc. 1 at ¶¶ 1–2.)  In the summer of 2021, Mr. Yohananov registered his daughters for three weeks at Fair Lawn Jewish Day Camp, a summer camp located in Fair Lawn, New Jersey.  (<u>Id.</u> at ¶¶ 8–9.)  On July 17, 2021, a "male camp staff member" allegedly made insulting, name-calling comments to L.Y., Mr. Yohananov's eleven-year-old daughter, which caused her to "become traumatized from the experience requiring professional therapy for trauma."  (<u>Id.</u> at ¶ 16.)  A.Y., L.Y.'s sister, witnessed the alleged name-calling and also suffered emotional distress as a result of seeing her sister demeaned by camp staff.  (<u>Id.</u> at ¶ 7.)

After L.Y. told Mr. Yohananov about the insulting comments made to her, Mr. Yohananov contacted the Camp Director, Rabbi Zaltzman, to notify him of the event.  (<u>Id.</u> at ¶ 17.)  Rabbi Zaltzman issued a written apology, confirming the name-calling that took place, but took no other corrective action.  (<u>Id.</u> at ¶ 18.)  Mr. Yohananov then removed his daughters from the camp and demanded

reimbursement for the enrollment fees, totaling $3,750.  (Id. at ¶ 19.)

In light of his daughters' negative experiences, Mr. Yohananov now alleges that the Defendants' website fraudulently advertises that the camp is "safe" and "fun," "affect[s] each camper in a positive manner," and "encourage[s] personal character growth."  (Id. at ¶ 10.)  Mr. Yohananov alludes to having accessed the Camp's website from his home in Fort Myers, Florida.  (Id. at ¶¶ 14–15.)  He now alleges damages exceeding $75,000.  (Id. at ¶ 22.)  Defendants, who are domiciled in New Jersey, now move to dismiss for lack of personal jurisdiction.  (Doc. 5-1 at ¶¶ 6–18.)

LEGAL STANDARD

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).  "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements."  Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

Personal jurisdiction is a two-part inquiry.  The court must determine: (1) "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute," and (2) whether exercising personal jurisdiction over the defendant is consistent with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.  Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir.

2004) (citation omitted).  "Only where the long-arm statute provides jurisdiction do [courts] proceed to the second step."  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 807 (11th Cir. 2010).

The application of Florida's long-arm statute is a question of Florida state law and, as a result, courts must construe the long-arm statute as would the Florida Supreme Court.  See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1271 (11th Cir. 2002).  "In the absence of definitive guidance from the Florida Supreme Court, [courts] follow relevant decisions from Florida's intermediate appellate courts."  State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1231 (11th Cir. 2004).

Florida's long-arm statute provides for both specific and general personal jurisdiction.  See Fla. Stat. § 48.193(1)-(2).  General personal jurisdiction exists when a defendant "is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity."  Id. § 48.193(2).  Specific personal jurisdiction, however, allows Florida courts to exercise personal jurisdiction over a defendant where the cause of action arises from or relates to the defendant's actions within Florida.  Id. § 48.193(1)(a).

A defendant challenging personal jurisdiction pursuant to Rule 12(b)(2) may submit affidavits in support of his position.  Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988.)  Still, the Court must accept the facts alleged in the plaintiff's complaint as true to the extent they are uncontroverted by the defendant's affidavits.  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  And where the

plaintiff's complaint and the defendant's affidavits conflict, the district court must

construe all reasonable inferences in favor of the plaintiff.  Id.

## DISCUSSION

Here, reviewing Mr. Yonananov's pro se pleadings liberally, as this Court

must, Mr. Yonananov has not established that this Court has either general

personal jurisdiction or specific jurisdiction over the Defendants under Florida law.

First, Mr. Yovananov appears[2] to argue that the Defendants are subject to general

personal jurisdiction in Florida because Fair Lawn Jewish Day Camp "conducts

camp business and services in interstate commerce . . .  in various states within the

United States." (Doc. 1 at ¶ 9; see also id. at ¶ 5.)  But Mr. Yovananov does not

plead that the Defendants are doing business in the state of Florida.  In fact, he

concedes that the Camp where his daughters were purportedly injured is located in

the State of New Jersey and does not plead Rabbi Zaltzman's residence in the first

instance.  (Id. at ¶¶ 5, 9.)  Rabbi Zaltzman's affidavit states that Defendants "do

business only in the state of New Jersey and neither do any business or have any

offices in the State of Florida." (Doc. 5-1 at ¶ 6.)  Nothing in the Complaint

_____

[2] Mr. Yovananov does not state explicitly that the Defendants are subject to either
general personal jurisdiction or specific personal jurisdiction, but construing his
Complaint liberally, as the Court must, his contention that the Defendants are
subject to the Court's personal jurisdiction because "they do business in interstate
commerce" could be read as invoking general personal jurisdiction under the Florida
long-arm statute. See Fla. Stat. § 48.193(2) (providing that, "A defendant who is
engaged in substantial and not isolated activity within this state, whether such
activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of
the courts of this state, whether or not the claim arises from that activity.").

expressly contradicts either of these assertions.[3]  Accordingly, Mr. Yohananov has

not adequately shown that this Court has general personal jurisdiction over the

Defendants.  See Louis Vuitton Malletier, S.A. v. Mosseri 736 F.3d 1339, 1352 (11th

Cir. 2013) ("General personal jurisdiction is based on a defendant's substantial

activity in Florida without regard to where the cause of action arose.") (citation

omitted).

Mr. Yohananov also fails to establish that the Court has specific personal

jurisdiction over Defendants because he has not alleged that the Defendants have

undertaken any specific action covered by the Florida long-arm statute,[4] nor has he

---

[3] Mr. Yonananov asserts "[t]hat the defendant day camp 'Fair Lawn Jewish Day Camp' is located in New Jersey at 30-02 Fair Lawn Avenue Fair Lawn New Jersey, and conducts camp business and services in interstate commerce conducting business and camp services in various states within the United States." (Doc. 1 at ¶ 9.)  He later states in his Response that the Defendants "conduct business in interstate commerce" because "they travel among the several states as part of their business, taking the campers with them for out of state visits and stay overs." (Doc. 9 at ¶ 7.)  These statements first appear to concede that the Camp's principal place of business is in New Jersey, and second, fail to state explicitly that the Camp has any business operations or camp services in the State of Florida.

[4] The potentially relevant portions of the Florida long-arm statute provide:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> . . .
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

mentioned any basis for personal jurisdiction in any of his pleadings.[5]  See Wash.
Capital Corp. v. Milandco, Ltd., Inc., 695 So. 2d 838, 841 (Fla. 4th DCA 1987)
(explaining a plaintiff satisfies its initial pleading requirements by incorporating
the language of the long-arm statute and by alleging specific facts that demonstrate
that the defendant's actions fit within one or more subsections of the statute).  Upon
review of the Complaint, Mr. Yohananov has failed to allege any of the enumerated
circumstances to invoke personal jurisdiction under Florida's long-arm statute.  As
such, Mr. Yohananov has fallen short of meeting the initial pleading standards for
personal jurisdiction.

Liberally construing Mr. Yohananov's Complaint, the Court has also
considered whether it has personal jurisdiction because Defendants "advertise[ ]
and promote[ ] enrollment of children ages 5-13 on the internet."  (Doc. 1 at ¶¶ 10–
11.)  Mr. Yohananov alleges that those advertisements, accessible via the

---

a. The defendant was engaged in solicitation or service activities
within this state; or
b. Products, materials, or things processed, serviced, or
manufactured by the defendant anywhere were used or consumed
within this state in the ordinary course of commerce, trade, or use.
7. Breaching a contract in this state by failing to perform acts required
by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a).

[5] In his Response, Mr. Yohananov states that "Defendant erroneously avers that
this Honorable Court does not have jurisdiction in persona, where the plaintiff is a
full-time resident of the state of Florida and invokes this court's jurisdiction over
the parties."  (Doc. 9 at ¶ 6.)  A plaintiff's residency is largely irrelevant to the
question of personal jurisdiction as the personal jurisdiction inquiry focuses
principally on the relationship between the defendant, the forum, and the litigation.
See Keeton v. Hustler Mag., 465 U.S. 770, 780 (1984).

Defendants' website, constitute false advertising in violation of the New Jersey

Consumer Fraud Act, N.J.S.A. 56:8-2.  (Id. at ¶ 11.)  The Act provides that:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or
> omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale or
> advertisement of any merchandise or real estate, or with the
> subsequent performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived, or damaged thereby, is
> declared to be an unlawful practice.

N.J.S.A 56:8-2 (emphasis added).

A plain reading of this statute makes it clear that it is directed solely towards

the advertisement of merchandise and real estate, not services such as those

provided by a day camp.  The Act is therefore inapplicable to the camp's website,

which neither advertises nor sells merchandise or real estate.  But even if Mr.

Yohananov had cited to a statute regulating the online advertisement of camp

programming, or something to that effect, such an advertisement would not have

fallen within the reach of the Florida long-arm statute.

Both the Eleventh Circuit and the Florida Supreme Court have held that in

limited circumstances, where a defendant directs a tortious act through a website

toward a Florida resident, and the website is both accessible, and actually accessed,

within the State of Florida, the owner or operator of that website can be subject to

personal jurisdiction in Florida.  See Licciardello, 544 F.3d at 1283 (holding that the

owners of a trademark infringing website created in Tennessee were subject to the

Florida long-arm statute because "in this case the alleged infringement clearly also

occurred in Florida by virtue of the website's accessibility in Florida"); <u>Internet Solutions Corp. v. Marshall</u>, 39 So.3d 1201, 1214–15 (Fla. 2010) (concluding that "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is accessed (or 'published') in Florida," thereby triggering the Florida long-arm statute).

The unifying factor in these cases is that the tortious aspects of the website were expressly targeted at citizens of the State of Florida.  In <u>Licciardello</u>, for example, the owner of the trademark infringed upon resided in Florida <u>and</u> the consumers confused by the trademark infringement included Florida residents.  544 F.3d at 1282–83.  And in <u>Internet Solutions Corp.</u>, the corporation which was defamed by the Washington-based website had its principal place of business in Florida.  39 So. 3d at 1202–03.  In sum, the tortious conduct perpetrated through the websites was clearly directed at Florida citizens.

Here, unlike in <u>Licciardello</u> and <u>Internet Solutions Corp.</u>, there is no indication that the allegedly tortious website was expressly targeted at the State of Florida.  Rabbi Zaltzman has stated that "Neither Bris Avrohom of Fair Lawn, Inc. nor FLJDC not [sic] I have ever had at any time any program, operational plan or business plan to contact or solicit campers or their families, or anyone, outside the State of New Jersey," nor have they "advertised in any media located in Florida." (Doc. 5-1 at ¶¶ 7, 18.)  Instead, the only connection that Mr. Yohananov can draw between the Defendants' website and the State of Florida is that he accessed the

9

website from his home in Fort Myers, Florida and believes that it contained false,

deceptive, information.  (See Doc. 1 at ¶¶ 1, 12.)  This is insufficient to establish

that the Defendants' website was directed at citizens of the State of Florida in any

meaningful way.  Thus, the Court concludes that Defendants' conduct with respect

to their website is insufficient to bring the action within the ambit of Florida's long-

arm statute relating to tortious conduct.

With respect to the other statutory bases under which jurisdiction may be

extended over the Defendants, the Court has determined that Rabbi Zaltzman's

affidavit shows that the Defendants have not operated a business, committed a

tortious act, owned real property, entered into an insurance contract, engaged in

solicitation or service activities, or breached a contract in the state of Florida, which

represent the remaining enumerated acts under Florida's long-arm statute for

which personal jurisdiction can be invoked.  See Fla. Stat. § 48.193(1)(a); (Doc. 5-1

at ¶¶ 6–18.)  As such, no basis for personal jurisdiction has been demonstrated

under the dictates of Florida's long-arm statute.

Because the long-arm statute does not confer personal jurisdiction over the

Defendants, the Court need not reach the second step of the two-step inquiry to

determine whether personal jurisdiction is proper under the Due Process Clause of

the U.S. Constitution.  See PVC Windoors, 598 F.3d at 807 (explaining that "[o]nly

where the long-arm statute provides jurisdiction do we proceed to the second step"

and evaluate due process because "federal courts are duty bound to avoid a

constitutional question if answering the question is unnecessary to the adjudication

of the claims at hand").[6]  The Defendants' Motion to Dismiss for lack of personal

jurisdiction is therefore GRANTED.

CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss for Lack of <u>In</u>

<u>Personam</u> Jurisdiction (Doc. 5) is **GRANTED**, and the Clerk is **DIRECTED** to close

the file.

ORDERED at Fort Myers, Florida, on August 2, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[6] That said, the Court notes that even if Defendants' conduct fell within the ambits of the Florida long-arm statute, it is unlikely that the requirements of due process would have permitted the Middle District of Florida to proceed forth with consideration of the merits of this case.  The Court suggests—<u>but neither advises nor directs</u>—that should Mr. Yohananov choose to move forward with legal action against Defendants, he may want to research whether filing this case in a federal or state court in New Jersey is appropriate.